### NEW HAVEN STEAMBOAT CO. v. PROVIDENCE WASHINGTON INS. CO.

(Supreme Court, Appellate Division, First Department. November 20, 1896.)

1. MARINE INSURANCE—SUBSTITUTION—CONSTRUCTION OF CONTRACT.

A policy on the steamer N. provided that the insurance should cover any other steamer which should take her place "to the same extent as if this policy were originally and specifically written upon the steamer so substituted; * * * notice of such substitution to be given." The C. was substituted for the N., and due notice given. Held, that the policy, by its terms, thereafter attached to the C., and did not reattach to the N. when she resumed her place. Barrett and Ingraham, JJ., dissenting.

2. SAME—COURSE OF DEALING—RESUBSTITUTION—NOTICE.

Where it had been customary under similar policies for defendant to permit resubstitution of steamers from time to time, on notice of each change, plaintiff had a right to resubstitute the original steamer, but only on notice, as in case of substitution.

3. SAME—EVIDENCE OF RESUBSTITUTION.

Plaintiff employed the three steamers, N., C., and E. Defendant insured the N. under a policy which permitted the insurance to attach to any steamer substituted for the N., and to reattach to the N. when she should resume her place. Notice of such substitution and resubstitution was to be given the insurer. Plaintiff notified defendant that the C. had been substituted for the N., and afterwards wrote that the E. would be withdrawn, and the C. resume her place, when "the policy on the latter boat will then apply." Held, that this letter was no evidence that the N. had resumed her place, and that her former policy was to reattach to her. Barrett and Ingraham, JJ., dissenting.

Action by the New Haven Steamboat Company against the Providence Washington Insurance Company on a policy of insurance. The complaint was dismissed, and plaintiff moved for a new trial on exceptions ordered to be heard in the appellate division in the first instance. Denied.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William J. Kelly, for plaintiff.
Robert D. Benedict, for defendant.

RUMSEY, J.   On the 4th day of January, 1890, the defendant issued to the plaintiff a policy of insurance upon the plaintiff's steamer C. H. Northam.   The policy contained a provision for substitution of another steamer, which will be referred to more at length later. On the 24th day of February, 1890, the plaintiff gave notice to the defendant that the steamer Continental had on that day taken the place of the steamer Northam.   On the 4th day of September, 1890, the Northam was injured in a collision, and the defendant, if its policy of insurance was then in force as to the Northam, became liable to pay as indemnity for the damages suffered by the collision a certain amount of money, which is not here in dispute.   Notice was given by the plaintiff to the defendant of the loss, but liability was repudiated by the insurance company, and thereupon, after considerable delay, this action was brought.   Upon trial at the circuit a verdict was ordered for the defendant, and the exceptions taken by the plaintiff were ordered to be heard in the first instance in the appellate division, and thereupon the plaintiff makes this motion for a new trial upon the exceptions.

It is claimed on the part of the defendant that when another steamer was substituted for the Northam on the 24th of February, 1890, and notice of that substitution given, the policy of insurance attached to the steamer thus substituted, and that there should be no resubstitution, or at least none by virtue of which the policy would reattach to the Northam, until notice of that resubstitution had been given to the defendant.   It is claimed, on the contrary, by the plaintiff, that the substitution of another steamer in place of the Northam only lasted so long as the other steamer should be running upon the line in her place, and when that ceased to be the case the policy again attached to the Northam without notice of the resubstitution; or that, if a notice of the resubstitution was necessary, there were facts from which the giving of such notice could be inferred, and therefore the case should have been sent to the jury.   It is clear that this dispute is to be decided purely by a construction of the policy in the light of the facts which were made to appear upon the trial.   It is conceded that on the 24th of February, 1890, a notice was given by the plaintiff to the insurance company that the Northam was taken off the line, and that the steamer Continental had taken its place; and it is conceded also that upon the giving of that notice the policy of insurance which before that time had stood upon the Northam became attached to the steamer Continental.   The effect of that substitution is to be decided by an examination of the terms of the policy.   Upon that examination it is to be seen that the policy, in the first place, purports to insure the plaintiff in the sum of $12,500 on the steamer C. H. Northam from the 4th day of January, 1890, until the 4th of January, 1891.   By a rider attached to the policy it is provided that the insurance shall be upon the steamer C. H. Northam, her hull, engines, boilers, etc., "or whatever steamer may be employed upon the line in the place of said steamer C. H. Northam."   If that were all there were of the policy, it would be quite clear, we think, that the contract between the parties provided for a substitution of any other steamer

which should be put upon the line in the place of the Northam, but it did not provide for any resubstitution, or that the policy should again attach to the Northam after it had once been diverted from her. The policy contains, however, the further clause: "Privilege to substitute any other steamer owned or chartered by the assured to run on said line in place of said steamer C. H. Northam, and this policy shall attach to such steamer, her hull, etc., to the same extent as if this policy were originally and specifically written upon the steamer so substituted instead of upon said steamer. Notice of such substitution to be given this insurance company at the time it is made, or as soon thereafter as is practical." It is under this provision in the policy that the substitution was made. Upon examination of this clause in the policy it will be seen that it does not provide in any way for a resubstitution of the Northam after another steamer has been put in her place. The attaching of the policy upon the substituted steamer is not limited so that it shall continue "only so long as she runs upon the line," or "until the Northam shall resume her place upon the line," or equivalent words, but the policy, after the substitution, by its express terms, attaches to the substituted steamer to the same effect as if it were originally and specifically written upon her, instead of upon the Northam. The policy was originally written upon the Northam for one year from the 4th day of January, 1890, and when the policy attached upon the substituted steamer it is quite clear that it attached upon that steamer to the same extent, and for the same time, as it had been originally written upon the Northam; that is, until the 4th day of January, 1891. There is nothing in the words of the policy from which it can be inferred that there was any general and standing right of resubstitution of one steamer for another; but, if we stand upon the words of the policy, it is quite clear that when there has been a substitution the policy attaches upon the substituted steamer once for all during its life. But as in all cases where a contract is to be construed the action of the parties under it may be referred to as throwing light upon their intention with regard to it, so in this case it is proper that we should refer to the evidence to ascertain whether the contract had been construed by the parties to permit a resubstitution of steamers from time to time. It is fairly to be inferred from the testimony of Mr. Lethbridge, an agent of the company, that it was the custom of the plaintiff to give notice from time to time that one steamer had been withdrawn from the line, and that another steamer had taken her place, and that upon the receipt of such notice it was permitted that the insurance should be changed from the steamer upon the line to the substituted steamer. One of such notices is produced in the case, and it appears that there had been various other resubstitutions, from time to time, of one steamer for another. In view of this course of business, we think it is fair to construe the contract as permitting a resubstitution of one steamer for another when the substituted steamer shall have been withdrawn from the line, and the original steamer resubstituted in her place. But the same evidence shows that notice was always given to the defendant of the resubstitution, and the con-

struction thus given by the parties to their own contract is of great weight to show that such notice was required. In view of these facts, it seems to us that there could be no resubstitution without a notice to the defendant of that fact. It is expressly provided in the contract that notice of the first substitution must be given to the insured, and until that notice has been given the substitution clearly cannot take effect. As we have seen, when that substitution takes effect, the policy is withdrawn from the Northam, and attached to another steamer, to the same extent as it had been originally attached to the Northam. While the defendant is undoubtedly charged with knowledge of the customs of business of the insured (1 Phil. Ins. § 140), and therefore it may be claimed that it was bound to know that the plaintiff was in the habit of substituting one steamer for another, it was not bound to know that any particular steamer was running upon the line at any particular time. Neither was it bound to know that one of the three steamers of the plaintiff was running upon the line, because the policy provides that the substitution may be not only of any steamer that is owned by the plaintiff, but any steamer that is chartered by the plaintiff. It has no means of knowing, therefore, what is the situation of any one of the steamers, and it had a right to rely upon the situation of affairs as disclosed to it by the information which it received from the plaintiff from time to time, as indicating upon what steamer the risks they had written applied. When one steamer was substituted for another under any given policy, the resubstitution, if there was one, was to be made by the assured. Unless notice of it was given to the insurer, it would be utterly impossible for it to ascertain upon what steamers its risks had applied at any given time, or what was the nature of the risks which it was insuring. It is obvious that any construction of the contract which would place the insurer in such a condition as that with reference to the policies it had issued would be a hard and unreasonable one, and ought not to be adopted, unless it necessarily follows from the acts of the parties themselves, or the words of the policy. But when we examine the acts of the parties themselves, to the meager extent to which they have been shown by this evidence, it seems that they gave notice of resubstitution as well as of the original substitution. In the only case in which there is any proof that there was a resubstitution, notice of it was given to the insurer. We are quite clear, therefore, that, even if there could be under the policy, as construed by the acts of the parties, a resubstitution after the first substitution had taken place, notice of that resubstitution must be given to make it effectual and binding, precisely as notice of the original substitution must have been given.

But it is said that upon the evidence there was sufficient to require the court to submit to the jury the question whether such notice had not been given to the insurer. The evidence relied upon to produce that effect is a letter of May 10, 1890, sent to the agent of the defendant, advising him that the Elm City would on Monday be withdrawn from the route, and the Continental would resume her place for the season; "the policy which you hold on the latter boat

will then apply." It is claimed that the jury might infer from this evidence that the insurance company had notice that the Continental had ceased to run upon the route in the place of the Northam, and the Elm City had been substituted in her place, and that the Continental was again to go back; and it is said that the necessary inference of fact was that the Northam was running upon the line. We do not see that any such inference follows. The defendant was not called upon, nor was it supposed, to know the exact situation of any steamer upon the plaintiff's line. For aught which is made to appear to it, the Northam, which was laid up in February, was still laid up, and was not running. There is nothing in the evidence to show that it had any reason to suppose that the Northam had gone back upon the line, and for that reason it seems to us that the letter of May 10th could not, by any inference, be construed to be a notice to it that the Northam had been resubstituted under her policy of insurance for the Continental. But it is said that, unless that notice is to be implied, it would be necessary to say that there were two policies of insurance upon the Continental at the same time. Admitting that to be the case, it is a matter of no particular importance, unless the defendant took advantage of it. It might well be that in the various changes back and forth there would be at some time double insurance upon one or other of the ships. But if the defendant made no objection to it, the policy was still valid, so far as it was concerned, and no inference of notice one way or the other can be drawn from it. For these reasons it seems to us that the Northam had not been effectively resubstituted in the place of the steamer to which the policy attached by the notice of February 24th, and that there was nothing from which the defendant could infer such a resubstitution, and the action of the court in ordering a verdict for the defendant was proper.

The motion for a new trial should be denied, with costs, and judgment ordered for the defendant upon the verdict.

VAN BRUNT, P. J., and O'BRIEN, J., concur.

BARRETT, J. (dissenting). The plaintiff's policy was: "On steamer C. H. Northam, * * * or whatever steamer may be employed upon the line in place of said steamer C. H. Northam by the said New Haven Steamboat Company; said vessel to be employed between New York and New Haven, Conn., and intermediate ports and places," etc. The only other material clause as to the nature of the subject of insurance is a later one, which reads: "Privilege to substitute any other steamer owned or chartered by the assured, to run on said line in place of said steamer C. H. Northam, and this policy shall attach to such steamer * * * to the same effect as if this policy were originally and specifically written upon the steamer so substituted, instead of upon said steamer." These words leave no doubt as to the precise intention of the parties. The first clause shows that the Northam was not the absolute subject of insurance during the whole period. The insurance was upon the Northam, "or whatever steamer may be employed upon the line in place of

said steamer." As soon as the Northam ceases to run, the alternative provision takes effect, and the insurance becomes transferred to the vessel taking her place upon the line from New York to New Haven. But the policy then attaches to the latter steamer "to the same effect" as it had to the Northam; subject, that is, to the same right of substitution in the plaintiff. Thus the plaintiff was entitled to make as many substitutions as it chose of steamers to run in the Northam's place, and the insurance attached at once to the vessel so substituted. It is equally plain that, should the Northam resume work, it would again become the subject of insurance; not, however, under the substitution clause, but as the vessel originally insured. In the absence of other provisions, the insurance would have attached to it during the whole of the year from January 4, 1890, to January 4, 1891. The insurance is displaced only in favor of "whatever steamer may be employed" in place of it. If, however, there should be no such steamer,—if, that is, the Northam should be doing her own work,—then the insurance would be upon her; and this would be true of every hour and minute throughout the whole of the insured period, no matter what prior changes might have been made upon the line. The intention was to indemnify the plaintiff for a year against loss upon the Northam, or the doer of the Northam's work.

So far, then, the plaintiff's right to recover seems clear. The only condition that could possibly affect that right will now be stated. The policy, by a clause immediately following the second one above quoted, giving the plaintiff its privilege of substitution, provides for "notice of such substitution to be given this insurance company at the time it is made, or as soon thereafter as is practical." The meaning of this is clear. Whenever another steamer is substituted to run for the Northam, the defendant is entitled to notice of the fact. Be the substitutes for the Northam one or many, in each case the notice is necessary. But this provision cannot be tortured into meaning that the defendant must be notified when the Northam resumes work. It is only in the case of a substitute for the Northam that the notice is required, and the Northam can neither be a substitute for herself nor a substitute for a substitute. She is the boat originally and principally insured,—the contemplated chief worker on the plaintiff's line. Other steamers may for a time take her place, and do her work; and notice on these occasions is necessary. But to hold that notice is required when the Northam again takes her place is to read into the policy something which is not there, and to commit a decisive breach of the fundamental rule of law that provisions in policies of insurance are to be construed most strongly against the insurer. If, however, this construction of the policy were not the true one, the plaintiff was certainly entitled, as it requested, to have the jury decide whether or not it gave the defendant sufficient notice of the revocation of the substitution of the Continental for the Northam, and the reinstatement of the latter. On May 10, 1890, as the defendant knew, the Elm City was running as substitute for the Continental under other policies upon the latter, amounting in all to precisely the same sum as that for which

the Northam was insured. On this 10th day of May, 1890, the defendant was notified that the Elm City was entirely withdrawn from the route, and that the Continental will resume her place for the season. At this time the Northam had been running again for nearly a month. The defendant knew that the plaintiff employed three boats on this line,—the Northam, the Continental, and the Elm City; the latter being ordinarily a substitute boat. There is some evasive testimony on the part of Lethbridge, the defendant's general agent, who executed the policy in suit, as to his knowledge of this fact; but that he did know it is perfectly apparent. Aside from what must have been disclosed to him by the policies and the substitutions made under them, we have his direct statement, on redirect examination, that "the line owned three boats, and insured only two of them, with the privilege of substituting the other boat in place of the two insured, in case they required it." As the defendant's policies were on running boats, the plain inference is knowl-. edge on its part that the plaintiff kept two boats constantly running. Hence a notice that the Elm City was to be taken off the route, and that the Continental was to resume her place, plainly indicated that the Northam was back at work at the time; otherwise the plaintiff would have had only one boat running,—an unlikely contingency, which would have subjected the plaintiff to double premiums for a single insurance. This is apparent when we consider that the moment the Continental ceased to be a substitute for the Northam, she was no longer insured as such substitute under the Northam's policy. She then resumed her insurance under her own policies. Consequently the two premiums—one upon the Northam's policy, and one upon the Continental's policies—could not have produced double indemnity to the Continental in case of loss. They would have been wasted, or, rather, one would have been wasted, upon the Continental's single indemnity. The defendant could not have believed, after learning that the Elm City was withdrawn from the route, and that the Continental had resumed her place for the season, that the latter thereafter continued to run upon her own independent account, and at the same time as a substitute for the Northam. When the Continental resumed her place for the season, the defendant therefore knew at once that she had ceased to be a substitute for the Northam. What then? The Elm City was gone from the route, the Continental was no longer a substitute for the Northam, but was running independently under her own original policies. And the Northam? What was the plain inference as to her? Naturally that she, too, had returned to her work; that, like the Continental, she had resumed her place upon the line. What other alternatives were there? And how do these other alternatives compare in the line of probability with the preceding view? There were but two alternatives which could have entered the defendant's mind,—one that the plaintiffs were running their line with but a single boat; the other that the plaintiffs had chartered an outside boat to again act as a substitute for the Northam instead of the Continental. But these were the barest of possibilities, and could hardly have been contemplated by the defendant. The most natural

inference was certainly that, at the Northam's substitute was gone, the Northam herself had resumed her original place upon the line, and under her own policy. How, then, can it be said that the jury might not properly have found that the notice of May 10th, coupled with the defendant's knowledge of how the plaintiff's line was equipped and run, did convey to it the information that the Northam was back at work, and had resumed her original place upon the line? We think the jury might well have found that this notice, under the circumstances, did substantially convey such information, and, if it did, the requirement, if any, that notice of resumption should be given, was satisfied.

The claim that the action is barred by the provision in the policy that "all claims shall be void unless prosecuted within six months from the date of the loss," is untenable. This six-months period of limitation does not begin to run until the loss becomes payable under the terms of the policy. Steen v. Insurance Co., 89 N. Y. 315, 323. The policy provides, "Loss, if any, to be paid within thirty days after proof of same." The proofs of loss were delivered to the defendant on February 3, 1891, and the period of limitation did not commence till 30 days after this date, or March 5, 1891. Six months from the latter date would be September 5th, and the action was commenced August 19th.

The exceptions of the plaintiff should be sustained, and a new trial granted, with costs to the plaintiff to abide the event.

INGRAHAM, J., concurs.